UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 833 |
| v. | |
| CHRISTOPHER D. JOHNSON | Judge Joan Humphrey Lefkow |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS AND
OBJECTIONS TO PRESENTENCE REPORT**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR.,
United States Attorney for the Northern District of Illinois, hereby submits its
position paper as to the pertinent sentencing factors in this case, along with its
objections to the Presentence Report.

## I.   BACKGROUND

In the late evening of April 26, 2020, while driving erratically in a residential
area of Markham, Illinois, defendant encountered two women, one of whom was
pregnant. He pulled the car next to them and asked if they wanted a ride. When they
declined, defendant pulled out a gun, pointed it at the women, and tried to get them
in his car. Frightened, the women fled into a nearby residence and called 911. PSR
¶ 7. For approximately 10 minutes, defendant remained outside before eventually
driving away. When law enforcement arrived, the women—one of whom was visibly
pregnant—were frightened and upset. *Id.* Approximately an hour after the encounter,
officers found defendant sitting in his car nearby with the loaded gun on his lap. PSR
¶ 6.

The gun itself was a "ghost" gun whose place of assembly is unknown. PSR ¶ 7. The ammunition, however, was manufactured in Arkansas, and had traveled in interstate commerce prior to defendant's possession of it. PSR ¶ 6. The defendant, a convicted felon, was prohibited from possessing guns or ammunition. And, at the time of defendant's possession of the ammunition, defendant knew that he had two prior felony convictions, for aggravated DUI and obstruction of justice, and that he had previously been sentenced to 18 months' imprisonment for aggravated DUI. *Id.*

Defendant was charged by indictment on November 10, 2020, with one count of possession of ammunition as a felon, in violation of Title 18, United States Code, Section 922(g)(1). PSR ¶ 1. Pursuant to a plea declaration, the defendant pleaded guilty on September 14, 2021. PSR ¶ 4.

## II. GUIDELINES CALCULATIONS

The government disagrees with the offense level calculations set forth in the PSR submitted by the United States Probation Office. As explained further below, the government objects to (1) PSR ¶ 16, in which the Probation Office fails to cross-reference the kidnapping/abduction/unlawful restraint guideline pursuant to U.S.S.G. § 2K2.1(c)(1)(A); and (2) PSR ¶ 18, in which the Probation Office fails to include a vulnerable victim adjustment pursuant to § 3A1.1.

### A. Revised Offense Level Calculation

The government submits the following is the appropriate calculation of the Guidelines offense level:

The base offense level under U.S.S.G. § 2K2.1(a)(6)(A) is <u>14</u> because defendant was a prohibited person at the time he committed the offense.

Because defendant possessed the ammunition cited in the offense of conviction in connection with the attempted commission of another offense, the base offense level is that of the cross-referenced offense, pursuant to U.S.S.G. §§ 2K2.1(c)(1)(A) and 2X1.1(a), if the resulting offense level is greater than that determined through application of § 2K2.1. Because the other attempted offense is kidnapping/abduction/unlawful restraint, pursuant to § 2A4.1(a), the base offense level is <u>32</u>.

The offense level is <u>reduced by three</u> levels, pursuant to § 2X1.1(b)(1), because the cross-referenced offense was an attempt.[1]

The offense level is <u>increased by two levels</u>, pursuant to § 3A1.1(b)(1), because defendant knew or should have known that a victim of his relevant conduct was a vulnerable victim.

Unless the defendant takes a position that is inconsistent with his acceptance of responsibility at sentencing, the offense level should be <u>reduced by three</u> levels, pursuant to § 3E1.1, because defendant has accepted responsibility for his offense.

Thus, under the government's revised calculation, the total offense level is <u>28</u>.

---

[1] The calculation set forth in the Government's Version of the Offense erroneously omitted this adjustment and erroneously included an increase to the offense level based on the "use" of a firearm. Because the firearm was brandished but not "used," as that term is defined in the Guidelines, that adjustment is not applicable.

**B.      Objection to PSR ¶ 16 – Cross Reference to Kidnapping**

The government disagrees with the Probation Officer with respect to the nature of the crime defendant committed during his encounter with the two women. The Probation Officer contends that the crime was aggravated assault, which results in a 4-level adjustment pursuant to U.S.S.G. § 2K2.1(b)(6)(B). PSR ¶ 17. While the government agrees that the evidence shows that defendant committed that crime— and, therefore, that the Probation Officer's proposed adjustment should apply in the event that the court disagrees with the government's cross-reference to a kidnapping offense—the government respectfully disagrees with the Probation Office's assessment of the evidence that defendant attempted to commit kidnapping/unlawful restraint.

Specifically, according to the victims' statements to officers, on the night of defendant's possession of the ammunition, which was in a loaded gun, defendant had pointed the gun at the two women and tried to get them into his car after they declined his initial offer of a ride. (*See* Government's Version of the Offense Ex. A – Body-Worn Camera Footage, Videos #1 [filename ending in 2202] and #2 [filename ending in 2204].) The women described how defendant had been speeding and driving erratically, pulled up next to them, and asked if they wanted a ride. (*See* GVO Ex. A, Video #1, at approx. 00:35 – 00:46.) When they declined, he pulled out a gun and pointed it at them, tried to get them to enter his car, then lingered outside for minutes after they ran into a nearby house to call 911 and wait for help. (*Id.* Video #1 at approx. 00:40-1:30; Video #2, at approx. 4:14 ("[He was] still trying to get us to come

into his vehicle. But he was pointing the gun. I just thank God he did not pull that trigger.")

Defendant's conduct was an attempt to commit aggravated kidnapping (720 ILCS 5/10-2(a)(6)) or an attempt to commit aggravated unlawful restraint (720 ILCS 5/10-3.1) under Illinois law.[2] Specifically, defendant knowingly used the threat of force (pointing a loaded gun at the women) in an attempt to get them into his car, with the intent to secretly confine them against their will, and/or to detain them without lawful authority. *See, e.g., People v. Harris*, 68 Ill. App. 3d 12, 14-15 (1979) (forcing victims into car while holding pistol qualified as kidnapping under Illinois law); *People v. Bishop*, 2 Ill. 2d 60, 64 (1953) (forcible confinement in a car qualifies as kidnapping under Illinois law); *People v. Hamil*, 20 Ill. App. 3d 901, 908 (1974) (same).

This is supported by the statements the victims made to police officers, as reflected in the body-worn camera footage attached as Exhibit A to the Government's Version. Their statements—including their description of defendant and the gun—were made shortly after their encounter with defendant (whom they did not know) and were corroborated by officers' subsequent apprehension of defendant with the gun, thus demonstrating their reliability and accuracy. *See* Guideline § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination,

---

[2] The elements of aggravated kidnapping under 720 ILCS 5/10-2(a)(6) are as follows: (1) knowingly (2) by force or threat of imminent force (3) carrying another from one place to another (4) with intent secretly to confine that other person against her will (5) while armed with a firearm. The elements of aggravated unlawful restraint under 720 ILCS 5/10-3.1 are as follows: (1) knowingly (2) without legal authority (3) detaining another (4) while using a deadly weapon.

the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.") Accordingly, pursuant to Guideline § 2K2.1(c)(1)(A), a cross-reference to Guideline § 2X1.1 (attempt) and Guideline § 2A4.1 (kidnapping, abduction, or unlawful restraint) applies.

The Probation Officer offered two reasons why this cross-reference should not apply. The first is that defendant had not been arrested or charged with attempted kidnapping. PSR ¶ 16. But that is not the applicable standard; the question is whether the government has shown by a preponderance of the evidence that defendant committed the offense as part of his relevant conduct. *See, e.g., United States v. Oros*, 578 F.3d 703, 711 (7th Cir. 2009) (preponderance standard applies to relevant conduct). Prosecutorial charging decisions do not control application of the Guidelines. *See id.*; *United States v. Lucas*, 670 F.3d 784, 790 (7th Cir. 2012) ("A district court may consider a wide range of conduct at sentencing, including acquitted conduct and dismissed offenses.")

The Probation Officer's second contention is that the evidence is insufficient to show that defendant had the intent to kidnap the women or attempted to do so. PSR ¶ 16. While the Probation Officer acknowledges that defendant's conduct placed the women "in reasonable fear or apprehension of receiving an aggravated battery," he contends there is insufficient evidence that defendant intended to kidnap the women because "[n]either of the women states that Defendant Johnson ordered them into his car or threatened them with harm if they did not." *Id.* ¶¶ 16-17. Yet in the

second video one of the women plainly states that defendant was trying to get them into the car while pointing a gun at them. (*See* GVO Ex. A, Video #2 at 4:14 – 4:22 ("[He was] still trying to get us to come into his vehicle. But he was pointing the gun. I just thank God he did not pull that trigger while I was running.")

The Probation Officer suggests that defendant was merely "trying to convince" the women to get into the car, possibly "showing off his gun," and not necessarily "threatening to harm the women if they failed to comply with a demand." PSR ¶ 16. This view defies common sense and deprecates the gravity of the victims' terrifying experience. Whether the defendant was verbally "ordering" or merely "trying to convince" the victims to get in his car is beside the point because he was doing so *while pointing a loaded gun at them*. It is that act that shows he was threatening the use of force—and deadly force at that. Because he was doing so to get them to enter his car, against their will, it was an attempted kidnapping and/or unlawful restraint. *See People v. Harris*, 68 Ill. App. 3d 12, 14-15 (1979).

### C. Objection to ¶ 18 - Vulnerable Victim Adjustment

The government also disagrees with the Probation Office's failure to apply a victim-related adjustment pursuant to Guideline § 3A1.1. That failure may have been inadvertent; it's not clear that the Probation Office considered the adjustment. *See* PSR ¶ 18 (offering no explanation for not applying a victim-related adjustment). Pursuant to Guideline § 3A1.1(b)(1), the offense level should be increased by two levels because defendant knew or should have known that a victim of his relevant conduct was a vulnerable victim. Specifically, according to one of the women, when

he offered them a ride, she pointed out to him that the other woman (her wife) was pregnant. *See* GVO Ex. A, Video #2, at approximately 4:00 – 4:16 ("I said, I'm good . . . my wife [is] pregnant . . . [and then he] grabbed that gun, and that's when I ran…") Moreover, as shown in the Body-Worn Camera Footage, the other woman also was visibly pregnant. Nevertheless, defendant pulled out a gun and pointed it at the woman. *See id.* Video #2 at approx. 2:41 – 2:48 ("He scared the hell out of me . . . And I'm pregnant—I can't. He literally pointed that gun at me.") Accordingly, even if the court concludes that this conduct amounted only to an aggravated assault, and not an attempted kidnapping, the vulnerable victim adjustment should apply.

### D. Criminal History Calculation

The government agrees with the criminal history calculation set forth by the United States Probation Office, and that with seven points, the defendant's criminal history category is IV. PSR ¶ 35. This calculation differs from the government's calculation presented in the Government's Version of the Offense, which did not account for the 178-day term of imprisonment imposed, in addition to 24 months' probation, following defendant's convictions for DUI and obstruction of justice on or about May 23, 2018. PSR ¶ 32. With a term of imprisonment of at least 60 days included, the points assessed for this sentence are two, rather than one. *See* U.S.S.G. § 4A1.1(b).

### E. Guidelines Range

Under the Probation Officer's calculation, with a total offense level of 15, the advisory Guidelines range is 30 to 37 months' imprisonment. PSR ¶ 91. With the

victim-related adjustment, the total offense level would be 17, and the advisory Guidelines range would be 37 to 46 months' imprisonment.

Under the government's revised calculation above, with a total offense level of 28, without consideration of the statutory maximum, the advisory Guidelines range would be 130 to 162 months' imprisonment. In light of the statutory maximum of 120 months' imprisonment for the offense of conviction, however, the advisory guidelines sentence is 120 months' imprisonment, pursuant to U.S.S.G. § 5G1.1(c)(1).

## III. SENTENCING FACTORS AND GOVERNMENT'S RECOMMENDATION

Considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends a term within the properly calculated Guidelines range, which in this case would be a sentence of 120 months' imprisonment, along with a three-year term of supervised release. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Johnson's offense, promote respect for the law, provide just punishment, and afford adequate deterrence.

The government recognizes that this recommendation is substantially higher than that of the Probation Office, largely because of our divergent views of the proper Guidelines calculation. But underlying that divergence is a fundamentally different view of the gravity of the threat posed by defendant during his encounter with the two women that night, particularly in light of his history and characteristics.

### A. The Nature and Circumstances of the Offense

The defendant's offense of conviction was against the United States: in possessing ammunition, along with a gun, as a felon, the defendant subverted the

public interest in regulating the possession of deadly weapons to ensure the safety of the community. This case demonstrates that this law exists not only to protect from hypothetical harm, but actual harm. Defendant did not just illegally possess ammunition; the ammunition was in a loaded gun that he pointed at two women.

Defendant victimized the two women he encountered in April 2020. After recklessly driving by them, he returned, offered a ride, and then pointed a loaded gun at them—knowing that one of them was pregnant—and tried to get them to get into his car. The women were scared and visibly shaken by the encounter, and genuinely feared for their lives. Such conduct distinguishes defendant from the vast majority of defendants charged with possession of a firearm as a felon in this district, and it must be accounted for in the sentence imposed.

In his presentence interview, the defendant attributed his conduct to impulsive decision-making resulting from alcohol abuse and intoxication, and claimed there was "no actual victim of his conduct." PSR ¶ 12. Defendant's failure to acknowledge the women is striking. In any event, alcohol addiction and intoxication are not an excuse for pointing a loaded gun at other human beings—in this case, two women who were simply trying to walk down a street without being harassed.

### B.     The History and Characteristics of the Defendant

The defendant is 28 years old. The PSR notes that defendant lived in a dangerous neighborhood until the age of 12, lost his half-sister, and witnessed violence at a young age. PSR ¶¶ 56, 59. However, defendant reported a childhood in which he was raised by two working parents without suffering physical or verbal abuse, and that he feels emotionally supported by his family. PSR ¶¶ 62, 65.

This will be defendant's third felony conviction in less than six years. His prior convictions have typically involved drinking and driving luxury vehicles, including an aggravated DUI that caused "major bodily injury" in 2013, PSR ¶ 31, followed by another DUI in 2015, PSR ¶ 32. The Probation Office notes an additional 15 traffic offenses for which he was arrested, cited, and/or convicted. PSR ¶ 43.

It is likely that the defendant's history of alcohol abuse contributed to his commission of the relevant conduct associated with his offense, as well as his past crimes. But alcohol abuse cannot excuse or justify his conduct, particularly given his prior opportunities to get clean following prior convictions. Indeed, defendant's past failure to address his alcohol abuse problem suggests the need for a substantial period of imprisonment to protect the public from future crimes by the defendant. *See* 18 U.S.C. § 3553(a)(2)(C).

Although his professed current sobriety is promising, defendant does not have a long enough track record to inspire confidence that he can stay clean long-term. The Probation Officer notes defendant's "inconsistent attendance in group counseling and continued use of alcohol while participating in outpatient services," as recently as October 2021, and that he had not resumed those services as of December 2021. PSR ¶ 74.

A substantial period of incarceration, followed by a period of supervised release with substance abuse treatment, is likely to best balance the need to protect the public with the need to provide him with substance abuse treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(C) & (D).

## C. The Need to Promote Respect for the Law and Afford Adequate Deterrence

Particularly in light of the defendant's criminal history and the seriousness of his offense, the court should impose a sentence that promotes respect for the law and affords adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(A) & (B). Unfortunately, the defendant's crime reflects a failure of past sentences, the longest of which was 18 months, to deter or rehabilitate him.

Defendant suggests that he is not at risk of recidivism because he is maintaining his sobriety and moved to an area where he is "less inclined to arm himself for protection." PSR ¶ 12. But as a convicted felon, his choice of whether to arm himself is not a matter of whether he is "inclined" to do so. Moreover, as the PSR notes, defendant has not been in compliance with the terms of his pretrial release, including an incident on February 28, 2021, where he walked away from a motor vehicle accident involving a car registered to his mother, and three additional failures to comply with the conditions of his location monitoring, including as recently as November 26, 2021. PSR ¶ 3.

Defendant does not appear to have been chastened by his past experiences in the criminal justice system, nor by this one so far. To prevent recidivism, promote his respect for the law, and to justly punish this serious crime, a substantial period of imprisonment is appropriate.

## D. Supervised Release

In addition to a term of imprisonment, the government also recommends a period of three years' supervised release. The purposes of a term of supervised release

include "rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism." *United States v. Kappes*, 782 F.3d 828, 836 (7th Cir. 2015). Here, in light of the defendant's alcohol abuse and mental health treatment needs, supervised release will be a particularly important component of his sentence.

The government agrees with the four mandatory conditions of supervised release set forth by the Probation Office. PSR ¶ 93. The government further agrees with the discretionary conditions and special conditions proposed by the Probation Office. These conditions are (1) appropriate in light of his history of alcohol-related arrests and convictions and self-reported history of alcohol abuse; (2) necessary to provide him with needed mental health treatment in the most effective manner, in light of his mental health diagnoses; (3) necessary to ensure compliance with his financial obligations to support dependents; (4) necessary to promote his respect for the law, deter him from committing future crimes, and to protect the public from further crimes by him; (5) necessary to facilitate his reintegration as a law-abiding member of society; and (6) necessary to facilitate supervision by the Probation Office.

## IV.    CONCLUSION

For the reasons stated here, the government respectfully requests that this Court impose a sentence of 120 months' imprisonment, along with a period of three years' supervised release.

<div style="margin-left:40%">

Respectfully Submitted,

JOHN R. LAUSCH, JR.
UNITED STATES ATTORNEY

</div>

By:    */s/ L. Heidi Manschreck*
      L. HEIDI MANSCHRECK
      Assistant United States Attorney
      United States Attorney's Office
      219 South Dearborn, 5th Floor
      Chicago, Illinois 60604
      (312) 353-5300
      heidi.manschreck2@usdoj.gov

Dated: January 14, 2022